MARY E. STUART *vs.* WILLIAM DOBBS.

MARCH 17, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is an action of assumpsit wherein a jury returned a verdict for the plaintiff in the sum of $3,244.48, including interest. Defendant's motion for a new trial was denied. The case is before us solely on his exception to that ruling.

Briefly stated, the evidence shows that both parties were adversely affected financially by the general economic conditions of 1932. Early in February of that year the plaintiff, who had once before worked as housekeeper for the defendant while his mother was living, agreed to return to work for him in that same capacity at his farm in Johnston under an agreement as to which the testimony of the respective parties is in hopeless conflict. The plaintiff testified that the defendant agreed to pay her $10 a week as wages in addition to her room and board; that pursuant to such unconditional agreement she worked for him from February 9, 1932 to March 5, 1943, or 579 weeks, which entitled her to the gross sum of $5,790 for wages; that during that entire period she received in all $1,023.05 on account; and that therefore the defendant owed her a net balance of $4,766.95 for her services.

Defendant's version of the agreement was quite different. He testified that early in 1932, while visiting the plaintiff at her home in Providence, he asked her: "Well, May, how are you doing?" and she answered: "Not so good * * * I guess I'll have to go back to the farm." When he told her she might do so she agreed to go there the Friday following. On the question of wages he testified as follows: "Q. Did you make any agreement as to remuneration? A. I says like this: 'Well,' I said, 'we can farm it, plant potatoes, and get some chickens or something, do what we can till I get work, and when I get work and I'm working I'll pay you $10 a week.' "

Defendant further testified that he was out of work from

the time plaintiff went to the farm on February 9, 1932 to December 17, 1934, or 145 weeks, and again from about June to November 1942, or 20 weeks, a total unemployment period of approximately 165 weeks. He further testified that he always paid the plaintiff when he was employed; that he kept no record of such payments until 1937 when she threatened to sue him; that for the years 1937 to 1940, both inclusive, he paid her the aggregate sum of $1,752 according to the entries in certain books in evidence; and that after 1940 he stopped keeping such a record because she said that she was only "joking" about suing him.

Defendant's sole contention before us is that the verdict of $3,244.48 is clearly a compromise verdict and therefore invalid as a matter of law. To that end he argues that the amount of the verdict, which included interest at 6 per cent for at least six years, cannot be explained on any reasonable view of the evidence. He insists that because the verdict is just about one half of plaintiff's claim, plus interest, it is evident that the jury disregarded the evidence and returned a compromise verdict. "It is a singular fact," says the defendant in his brief, "that if you divide the amount that the Court charged the Jury was the plaintiff's claim, that is to say, $4766.95, in half you get the sum of $2383.48 * * * The interest for six years disregarding the months and days would be $858.00 giving the sum of $3241.48."

A verdict which cannot be explained on any reasonable view of the evidence is invalid. *Riley* v. *Tsagarakis*, 53 R. I. 261; *Sayegh* v. *Davis*, 46 R. I. 375; *Gartner* v. *Saxon*, 19 R. I. 461. The defendant, relying upon *his* interpretation of the verdict as above set forth, contends that he is not legally bound thereby as the jury plainly resorted to a compromise since the verdict is not supported by any reasonable computation. We would agree with him if his interpretation of the conflicting evidence were the only reasonable view of all the circumstances in the case. The calculation upon which he rests the claim of a compromise

verdict assumes that the jury accepted without qualification the plaintiff's version of the contract and the amount that she was willing to allow the defendant as a credit.

However, on the conflicting evidence and in the peculiar circumstances of record the jury could well have believed the plaintiff as to the length of time she was at the farm, and at the same time they could have believed the defendant that he was to pay her wages only when he was working; and also that he had paid her on account the aggregate sum shown by his books. Such a view of the evidence is reflected in the following computation, which is based on the testimony of the respective parties as hereinbefore outlined. The plaintiff's claim in gross was for 579 weeks or $5,790. Because of defendant's unemployment for 165 weeks he was entitled to an allowance of $1,650 and also to a credit of $1,752 for payments on account, a total of $3,402. This reduced the plaintiff's claim to $2,388, which with interest at 6 per cent for six years, or $859.68, brought the plaintiff's actual damages to $3,247.68. Since a legitimate and reasonable view of the evidence shows that the jury's verdict of $3,244.48 varies but slightly from the amount just indicated, we find the defendant's contention under consideration to be without merit.

The defendant's exception is overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Zietz & Sonkin, Julius C. Michaelson,* for plaintiff.

*Remington, Thomas, Levy & Arnold, Earle B. Arnold,* for defendant.